CASE 52—PETITIONS EQUITY—MARCH 9.

# Hill, &c., v. Lancaster, &c.
# Lancaster, &c., v. White.

### APPEALS FROM HARDIN CIRCUIT COURT.

1. HOMESTEAD—RES ADJUDICATA.—In an action by creditors of the grantor in a deed, against the grantor and grantees, to set aside the deed as fraudulent, and subject the land to the payment of the grantor's debts, the grantor filed an answer denying the alleged fraud and asserting that he had no interest whatever in the land. The court rendered judgment setting aside the deed and subjecting the land, and at the next term the grantor and his wife offered to file their joint petition in the same action asserting a claim to a homestead in the land. *Held*— That the debtor having permitted judgment to be rendered subjecting his entire interest in the land without asserting the right to a homestead, it was afterward too late to do so, the judgment being final. And the fact that the wife of the debtor now joins him in asserting the right does not strengthen his case, as the husband has the exclusive right to the homestead, and may sue or be sued for it without his wife being joined.

2. GUARDIAN AND WARD.—A guardian having resigned his trust, one who was indebted to him was appointed his successor. The former guardian being indebted to his wards, in a settlement between him and his successor the latter accepted as so much cash his own note held by the former guardian, who, at that time, regarded the note as perfectly good. It appears that both parties acted in perfect good faith. *Held*—That the former guardian is not liable to the wards for the amount of the note thus turned over to his successor, although it would be *otherwise* if he had known that his successor was insolvent, and had turned over the note to save his debt at the expense of the wards.

MONTGOMERY & POSTON FOR APPELLANTS, HILL, &C.

1. One who lends to the occupant of a homestead money, which is applied to pay therefor, is not entitled to subject the homestead to its repayment without an antecedent agreement to that effect. (Griffin v. Proctor, 14 Bush, 573.)

2. A vendor, having a homestead interest in land, may successfully assert it, although his conveyance be set aside for fraud at the suit of a creditor. (Kuevan v. Speeker & Co., 11 Bush, 1; Lockett's adm'r v. James' adm'r, 8 Bush; Dugan v. Massey, 6 Bush.)

3. Such a homestead right can be waived or lost only in the way pointed out by statute. (Wing v. Hayden, 10 Bush, 277.)

J. P. HOBSON FOR APPELLEE, WHITE.

1. The failure to assert, before judgment, claim to homestead in the land sought to be subjected, is a waiver of the homestead right. (Snapp v. Snapp, 10 Ky. Law Rep., 598; Miller v. Sherry, 2 Wal.)

2. As to the appellee, White, the relief sought being based upon alleged fraud, the action is barred by limitation, more than ten years having elapsed from the alleged fraud to the bringing of the action. (Wood on Limitations, p. 16; Angel on Limitations, sec. 292; Webster v. Newbold, 82 Am. Dec. 487; Pond v. Gibson, 81 Am. Dec. 726; Gen. Stat., secs. 2, 3, 6, 7, art. 3, chap. 71; Fritchler v. Koehler, 7 Ky. Law Rep., 36.)

3. Limitation began to run on the claim against White when he ceased to be guardian—the termination of the trust—and the bar was complete at the institution of the action. (Hargis v. Sewell, 9 Ky. Law Rep., 920; L. & N. R. R. Co. v. Sanders, 9 Ky. Law Rep., 690.)

BROWN & HAYCRAFT AND WILSON & SPRIGG FOR LANCASTER, &C.

1. The debtor having allowed judgment to be rendered subjecting his entire interest in the land without asserting his right to a homestead, it is now too late to do so. (Snapp v. Snapp, 10 Ky. Law Rep., 598.)

2. A guardian has no right to turn over to his successor *as cash* a note which he holds against the latter when he knows that the note is worthless, and by doing so he does not cancel his indebtedness to his wards. (Rowland, &c., v. Manons, &c., 8 Ky. Law Rep., 618.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

On the 22d of December, 1874, the appellee, Lancaster, as the county judge of Hardin county, permitted the appellant, James F. Hill, to execute bond and qualify as the guardian of Susan F. and R. L. Burnett, infants. After said wards arrived at the age of twenty-one years, the appellant, James F. Hill, having failed to pay them the money that he owed them as their guardian, they instituted an action against him and his sureties on his bond and recovered judgment against them for the amount due. Execution was issued upon this judgment and

returned, as to the appellant Hill and all his sureties, no property found.

Thereafter said wards instituted an action against the appellee, W. D. Lancaster, and his sureties, on his bond as county judge, in which they sought to make him and his sureties liable for the amount that went into the appellant Hill's hands as their guardian. The wards sought to hold W. D. Lancaster and his sureties liable upon the ground that Lancaster negligently failed to take from the appellant, Hill, a bond with sufficient surety. After a protracted litigation, the wards succeeded in establishing the charge of a negligent failure to take a bond with sufficient surety, and obtained judgment against Lancaster and his sureties for the amount of money that went into the hands of Hill as their guardian. Lancaster's sureties paid off this judgment.

Thereafter, in April, 1887, said Lancaster and his sureties instituted their action in equity against the appellant, Hill, and the appellee, White, and Williams and others, for the purpose of setting aside a deed to some real estate which appellant, as was alleged, caused to be made to his daughter, Mrs. Williams, and two grandchildren, which real estate it was alleged belonged to the appellant; and that the deed was made without any consideration and for the purpose of defrauding Hill's creditors. It was also alleged that the appellee, George W. White, as the former guardian of said wards, had in his hands a considerable amount of their money; that the appellant, Hill, was indebted to said White, which was evidenced by his note without security of any kind; that appellant was known by White to be hopelessly insolvent; that

by an arrangement entered into between appellant and White, the latter was to resign his guardianship, and the former was to be appointed in his place and take his own worthless note that White held upon him in lieu of the money that White owed said wards; that in order to carry out this arrangement, White fraudulently induced Lancaster to appoint the appellant, Hill, as guardian, and accept a bond that was wholly worthless. The appellant, Hill, and his alleged fraudulent vendees answered and denied all fraud, and alleged that the conveyance was for a valuable consideration. The appellee, White, traversed the allegations in reference to him. The trial of the case resulted in a judgment setting aside the said conveyances and subjecting the said real estate to the payment of the said demand and rejecting the demand against the appellee, White.

At the following term of court the appellant, Hill, and his wife, she not having theretofore been a party, filed their joint petition, which was made an answer, setting up their right to a homestead in said real estate; and the same having been sold by the court's commissioner, and not having brought exceeding one thousand dollars, they asked that either the land or its proceeds be set apart to them as a homestead. They also asked that the judgment theretofore rendered, and the sale of the land, be set aside. The Chancellor eventually overruled said motions, and sustained a demurrer to their petition. They have appealed to this court, complaining, mainly, upon the ground of the refusal of the Chancellor to allow them a homestead. Lancaster and his sureties have appealed from that part of the judgment that rejected their claim against the appellee, White.

The cases of Wing, &c., v. Hayden, &c., 10 Bush, 276,
and McGrath v. Berry, 13 Bush, 391, were actions upon
mortgages executed by the husbands, in which their re-
spective wives did not join, nor were they made defendants.
Thereafter, the husband in each case, together with his
wife, sought to recover a homestead in the land which had
been sold to satisfy the mortgage lien.   This court held, in
each case, that the default judgment was not a bar to the
claim of homestead.   It was so held upon the ground that
the mortgage in each case showed that the homestead had
not been relinquished in the manner pointed out by the
statute; that it could not be made liable to the mortgage
lien unless it was relinquished in the manner pointed out
by the statute; and the mortgage in each case showing,
conclusively, that the homestead was not relinquished, no
default judgment would have the effect of barring the
right to a homestead, and the purchaser at the decretal
sale would buy the land subject to it.

The case at bar is unlike those cases.   Here, the appel-
lees, Lancaster, &c., sought to subject the appellants' en-
tire right and title to this real estate to the payment of his
debt.   He joined issue upon the merits, denying that he
had any interest whatever in the land—not only not claim-
ing a homestead, but not disclosing any fact or circum-
stance which would, in any contingency, entitle him to a
homestead.   The Chancellor decided the issue against him,
and rendered judgment subjecting his entire interest in
the real estate to the payment of the debt.   This judgment
was final.   The power of the Chancellor over the judg-
ment—it being final—ceased upon the close of the term
at which it was rendered.   At a subsequent term the

appellant sought to file a petition, in the nature of an answer, setting up his right to a homestead; but it having been adjudged that his entire interest in said land should be sold, which judgment, as said, was final, the Chancellor correctly rejected the petition.

It is not denied—indeed, it is a fact—that the appellant, as between him and the appellees, Lancaster, &c., as his creditors, was entitled to a homestead in said real estate; but his entire interest in this real estate having been sought to be sold to satisfy the demand of these creditors, and he having appeared and defended upon the merits, and having failed to set up his homestead right, which would have been a complete bar to the appellee's action, if the real estate was not worth more than one thousand dollars, and if more than one thousand dollars, then a bar to the extent of a thousand dollars worth of the land, his effort to set up his right to his homestead came too late. To allow a defendant to split his defenses, relying upon one until judgment is rendered upon it against him, and at the next term open the judgment and plead another defense, and so on, would be a mockery of legal justice. Therefore, it is a universal rule that the final judgment of a court of competent jurisdiction is not only conclusive of all issues actually decided, but of all that might and should have been decided by it. And there is no good reason why the assertion of a homestead right should be made an exception to this salutary rule. The fact that his wife joins him in asserting the right can make no difference, for the right to the homestead is exclusively his. He may sue for it without joining his wife. If sued for it, he may defend

the action without joining his wife, and the decision will be conclusive of his right. He may make a valid sale of it without joining his wife. So the fact that the appellant's wife joined in the petition added nothing to the strength of his case. (Snapp v. Snapp, 87 Ky., 554.)

The judgments of the lower court, subjecting said real estate to the payment of said debt and sustaining the demurrer to the petition setting up claim to homestead, and refusing to set the sale aside, are affirmed.

In the case of W. D. Lancaster, &c., as appellants, against Geo. W. White, appellee, the weight of the evidence is clearly against the appellants' contention. The evidence shows, almost conclusively, that the appellee, White, did not directly or indirectly solicit or procure the appointment of Hill as the guardian of said children; that Hill was appointed such guardian, in the place of White, at the request of the mother of the children; that the appellee, White, at the request of the county judge, gave his opinion as to the sufficiency of the proffered bond, which was, that he believed the bond would be perfectly good; not, however, that the proffered sureties would make it good, but that the name of Hill alone was sufficient for that purpose; that, at the time of giving this opinion, the appellee regarded Hill as perfectly solvent, and his neighbors generally regarded him in that light; that the county judge had ample opportunities, outside of the opinion of the appellee, to know the financial condition of Hill.

It also appears that when Hill, after his appointment, approached the appellee for the purpose of obtaining the money that the latter held as former guardian, he asked Hill if he would take his (Hill's) own note in part pay-

ment of said sum, to which Hill replied, " of course," and took his note as so much cash.   It also appears that, at the time of this transaction, the appellee regarded this note as perfectly good, and that he did not surrender it to Hill in lieu of the money that he held belonging to Hill's wards for the purpose of saving a doubtful debt; nor does it appear that there was any agreement or understanding, expressed or implied, between Hill and the appellee, that in consideration of his being appointed guardian, Hill was to take his note in lieu of the money belonging to his wards; nor does it appear that the appellee contemplated such a purpose; on the contrary, it appears that the appellee regarded the note as good as gold, and proffered to surrender it as equivalent to so much money, and it was so accepted.

Suppose the appellee had paid Hill the money itself, and on that day or the next Hill had taken up his note with this same money, and the appellee had known that it was the same money, would it be contended that he would have been liable to the wards for it?   Surely not. Instead of this indirection, the same thing, in principle, was done directly, and the transaction was equally fair and innocent.   So we see no good reason why the appellee should be held bound for this money.

However, we do not mean to intimate that if the appellee had had reason to believe that Hill was insolvent, and had surrendered his note to him in lieu of the money that was due his wards for the purpose of saving his debt at the sacrifice of the interest of said wards, he would not be liable; on the contrary, we believe he would, in that state of case, be liable.

Judgment in both cases is affirmed.